# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:13-cr-00159-GMN-VCF |
| vs. ) | |
| ) | **ORDER** |
| TIMOTHY ROBERT NAVA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pending before this Court is Defendant, Timothy Robert Nava's, Motion to Recuse (ECF No. 22), and the Government's Response in Opposition to Defendant's Motion to Recuse (ECF No. 24).

## I. FACTS

Mr. Nava is currently under supervised release in the District of Nevada. He was sentenced in 2002 in the District of Montana to 175 months in custody for Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(l), to be followed by five (5) years of supervised release. Mr. Nava began supervised release on December 21, 2012. The District of Nevada accepted the transfer of jurisdiction from the District of Nevada on May 2, 2013.

On September 17, 2013, the United States Probation Office filed a Petition to revoke Mr. Nava's supervised release based upon the conduct described below and the criminal charges Mr. Nava is currently facing in North Las Vegas relating to a car accident. On September 15, 2013, a vehicle registered in Mr. Nava's name was involved in a single car collision which resulted in great bodily injury to two of Mr. Nava's cousins, Camile Gordon and Destiny Rodriguez, as well as Mr. Nava's girlfriend, Aurora Canela. An eyewitness explained that she

saw an unidentified Hispanic male get out of the car, look around, get back into the car and try to drive away. He spoke in Spanish to the occupants calling them "prima", which is Spanish for cousin. When the male could not drive away he got out, retrieved his cell phone and charger and left.

Prior to the revocation hearing, the Government moved to dismiss the Petition without prejudice and Mr. Nava filed a non-opposition to that motion. (ECF Nos. 18 & 19). At the hearing, the Government renewed its motion for dismissal of the petition and moved, in the alternative, for a continuance citing numerous reasons, including the government shutdown and the inability of the Government to pay to fly out-of-town witnesses to the district for a hearing. The Court denied the Government's motion to dismiss the revocation petition based upon its review of the police reports and witness statements. The defense requested a 30-day continuance and the Court granted the defense's request.

Defense counsel now moves for judicial recusal based on "the appearance of partiality due to the Court's *ex parte* review of certain discovery prior to the revocation hearing . . ." (Mot. for Recusal, ECF No. 22). The Government opposes the Motion for Recusal. (ECF No. 24).

The Court finds that a reasonable person would not question the Court's impartiality after reviewing documents provided to the Court and both parties by the probation officer to prepare for a revocation hearing. For the reasons set forth below, recusal is not necessary and the motion is denied.

**II.    LEGAL STANDARD**

Defense counsel bases its motion on 28 U.S.C. § 455, which states that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Additionally, recusal is also appropriate if the judge "has a personal bias or prejudice concerning a party, or personal

knowledge of the disputed evidentiary facts concerning the proceeding." *Id.* The Supreme Court has held that the "reasonable person" test is appropriate to determine whether a judge has violated § 455. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 859-60 (1988). Under this test, recusal is appropriate "[i]f it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation . . ." *Id.*

The Ninth Circuit has elaborated on this test in a number of cases. *See United States v. Holland*, 519 F.3d 909 (9th Cir. 2008); *see also Clemens v. United States Dist. Court*, 428 F.3d 1175 (9th Cir. 2005). In *Holland*, the appellant claimed that the district court judge who imposed a sentence upon him should have recused himself after the appellant obtained the judge's home phone number and left threatening messages on his machine. In *Holland*, the court first noted the "general proposition that, in the absence of a legitimate reason to recuse himself, a judge should participate in the cases assigned." *Holland*, 519 F.3d at 912 (citation omitted). Then, the court stated that disqualification is necessarily fact-driven and turns on the circumstances of every case, not on prior jurisprudence. *Id.* at 913. The court delineated a two-part test, with the first part being an objective test and the second part being a subjective test. *Id.* at 914-15. The objective test asks whether a reasonable third-party observer would perceive that there is a "significant risk" that the judge may be influenced by an "extrajudicial source," or something other than the judge's conduct during the proceedings. *See Id.* at 914. This reasonable third-party observer is not an everyday person on the street, but rather someone who understands the relevant facts and has examined the record and the law. *Id.* The subjective test is highly personal to a judge and asks the judge to look inward and decide whether he or she can administer justice with impartiality. *Id.*

### III.  ANALYSIS

Before proceeding to the two-part test, the threshold issue of the nature of the proceedings must first be addressed. In the situation at hand, defense counsel claims that an *ex*

*parte* review of reports provided by a probation officer to all parties before a revocation hearing causes an appearance of partiality. However, it is the responsibility of the Probation Office pursuant to 18 U.S.C. § 3603(2), to keep the Court informed regarding compliance with the Court's conditions. In several cases, the Ninth Circuit has shown a desire to protect the relationship between a parole officer and the court, even as early as the sentencing stage. *See United States v. Gonzales*, 765 F.2d 1393 (9th Cir. 1985); *United States v. Baldrich*, 471 F.3d 1110 (9th Cir. 2006); *United States v. Whitlock*, 639 F.3d 935 (9th Cir. 2011). In *Gonzales*, the defendant asserted that he was entitled to a full evidentiary hearing on the sentencing decision because of *ex parte* communications between the judge and the probation officer. *Gonzales*, 765 F.2d at 1398. However, the court held that *ex parte* communications between the judge and the probation officer are allowed because the probation officer is acting as an arm of the court. *Id.* Furthermore, as the court elaborated, "[i]f we accepted Gonzales' argument, we would effectively open the entire sentencing process to discovery and adversarial evidentiary hearings." *Id.* at 1399.

The Court is allowed to participate in *ex parte* communications with the probation officer because of the special relationship between probation officers and the court. During the term of supervision, the probation officer is charged with identifying supervision issues and planning an intervention strategy to address those issues with the offender. These strategies run the gamut from arranging referrals for substance abuse treatment to field contacts. "Because of the close working relationship between the probation officer and the sentencing court the probation officer may communicate *ex parte* with the district court." *United States v. Davis*, 151 F.3d 1304, 1306 (10th Cir. 1998) (internal quotations omitted); *see also United States v. Stanphill*, 146 F.3d 1221, 1224 (10th Cir. 1998) (district court's *ex parte* communications with a probation officer responsible for sentencing recommendations is not improper per se). Pursuant to 18 U.S.C. § 3603(2), a probation officer shall: "keep informed, to the degree

required by the conditions specified by the sentencing court, as to the conduct and condition of a probationer or a person on supervised release, who is under his supervision, and report his conduct and condition to the sentencing court." *United States v. Reyes*, 283 F.3d 446 (2d Cir.2002) (discussing the role of the USPO finding the PO acts as a "confidential advisor to the court" and a "neutral information gatherer with loyalties to no one but the court.") *United States v. Inserra,* 34 F.3d 83, 88 (2d Cir.1994) (since "[t]he United States Probation Office is established pursuant to the direction of Congress as an arm of the United States District Court[,]... it is reasonable to view the United States Probation Office itself as a legally constituted arm of the judicial branch.")

Furthermore, a revocation hearing is much different from the "guilt phase" of criminal proceedings. *See Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). Specifically, a revocation hearing "is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply . . ." *See Id.* at 480 (discussing revocation of parole). Revocation deprives an individual not of absolute liberty, but only of conditional liberty. *Id.* With this in mind, a defendant is entitled to question evidence during a revocation hearing under Rule 32.1 of the Federal Rules of Criminal Procedure, but the defendant is afforded less process in this stage and the rules of evidence are relaxed. *Id.* at 489.

Accordingly, the present case is distinguishable from the *Van Griffin* case cited by defense counsel. *Van Griffin* involved a trial, not a revocation hearing. *United States v. Van Griffin*, 874 F.2d 634, 637 (9th Cir. 1989). A revocation hearing takes place much later and different procedures apply. Second, *Van Griffin* involved a report received from a park ranger, not a probation officer. *Id.* While a park ranger is not associated with the court, a probation officer is expressly considered "an arm of the court." *Gonzales*, 765 F.2d at 1398. Likewise, all the other cases cited by the defendant supporting recusal illustrate instances that require full due process and do not incorporate the special relationship of the district court and the

probation officer.

Perhaps most importantly, denying a judge the ability to read reports provided by a probation officer prior to the revocation hearing would have grave consequences contrary to the principles of informality laid down by the Supreme Court in *Morrissey*. *See* 408 U.S. at 489. For it is up to the court to exercise its discretion to determine whether such a hearing should even take place. 18 U.S.C. § 3583(e)(2012); 18 U.S.C. § 3565(a)(2012). In the District of Nevada, a Form 12(c) "Petition for Warrant for Offender under Supervision" is presented to the court for its consideration. The court uses this information and any other information available to its Probation Office to determine whether a summons, warrant, other action or no action should be taken. The probation officer is also required to perform any other duty that the court may designate. 18 U.S.C. § 3603(10). If the district court desires more information about an offense before determining whether the revocation proceedings should continue and designates the probation officer to obtain that information, that is within their relationship bounds. It is within the Court's rights to ask the probation officer for more information about the offense. "Off-the-record communications between judges and probation officers are a normal part of the administration of justice, and not the least improper." *In re Complaint of Judicial Misconduct*, 583 F.3d 597 (9th Cir. 2009) (During supervision stage, "effective supervision calls for free and informal communication between judges and probation officers."). Likewise, probation officers, "charged with monitoring [an] offender's performance, owe[] a responsibility to the public to ensure that [the offender] who pose[s] a threat to public safety [is] not permitted to remain free, absent compliance with conditions which obviate possible danger. To fulfill these functions, the ... probation officer needs considerable investigative leeway." *Reyes*, 283 F.3d at 457 (citation omitted). If the communications between a court and its probation officer are protected at this earlier phase, then such communications cannot be improper during the revocation hearing. Therefore, under the objective portion of the two-part test, a reasonable

and well informed third party would not perceive that there is a significant risk that a judge would be influenced by a probation officer's report because a probation officer is an arm of the court, revocation proceedings commence at the court's discretion, and the proceedings carry on with a less formal atmosphere than a trial.

Mr. Nava was originally sentenced in Montana. His supervised release was transferred to the District of Nevada which required that the probation officer communicate with the court the information regarding the defendant. In *United States v. Mejia-Sanchez,* the court found that as a result of the special relationship between district courts and probation officers, the district court could *sua sponte* initiate revocation proceedings whenever it obtained information that a defendant violated a condition of his release. 172 F.3d 1172, 1175 (9th Cir. 1999). The probation officer's petition itself does not initiate the revocation proceedings; the district court ultimately decides whether to initiate revocation proceedings after considering the probation officer's report and petition. *Id.*

It is fundamental that the court is ultimately in control of revocation proceedings. 18 U.S.C. § 3653. There is no requirement in § 3653 that revocation proceedings be initiated by a particular officer of the government, or by any officer. Whenever the district court having jurisdiction over a probationer acquires knowledge from any source that a violation of the conditions of probation may have occurred, the court may then on its own volition inquire into the matter, in a manner consistent with the requirements of notice and due process which have been held applicable. *United States v. Feinberg*, 631 F.2d 388 (5th Cir. 1980) (the court may revoke probation, even where the government and the probation office had agreed that the probation would not be revoked). Neither the probation officer nor the government could, for example, dismiss the revocation proceeding without the court's approval. *Id.* In this case, Mr. Nava argues that a reasonable person would question the Court's impartiality when it denied the government's motion to dismiss. (*See* Nava's *Motion to Recuse* at p. 6, ll. 19-20).

1  However, as *Mejia-Sanchez* states, it is the district court who ultimately decides whether to
2  initiate the proceedings. 172 F.3d at 1175.  Therefore, the decision to move forward against the
3  wishes of the Government and the defendant does not show impartiality.
4      The Ninth Circuit has required disclosure of *ex parte* communications.  In *United States*
5  *v. Gonzales*, 765 F.2d 1393 (9th Cir.1985), the circuit required courts to disclose *ex parte*
6  communications it had with the probation officers.  Accordingly, this Court verified with the
7  probation officer that all the information provided to the court had also been provided to the
8  parties prior to the revocation hearing.  Additionally, this Court did list on the record for the
9  parties all the documents it was relying upon, articulating the evidence with specificity.  As
10  such, the defendant has failed to show how this Court's review of the evidence justifies a
11  recusal.
12      Recusal is required if a judge shows "[a]part from surrounding comments or
13  accompanying opinion" a reliance on extrajudicial source. *Liteky v. United States,* 510 U.S.
14  540, 541 (1994).  Absent a reliance on an extrajudicial source, recusal is required only when
15  judges evidence "such deep-seated favoritism or antagonism as would make fair judgment
16  impossible". *Id.; see also United States v. Hernandez,* 109 F.3d 1450, 1454 (9th Cir. 1997).  An
17  extrajudicial source would be a source outside the judicial proceeding in question. *Liteky,* 510
18  U.S. at 545.  The probation officer is an officer of the court, required to follow direction of the
19  court. *See* 18 U.S.C. § 3603(8)(B).  The evidence given to this Court by the probation officer is
20  not an extrajudicial source; it is a judicial source directly related to the proceeding in question.
21  It is completely up to this Court whether to proceed with a probation revocation hearing, and
22  therefore, this Court may rely on the evidence before it to determine whether the hearing should
23  occur. *See Mejia-Sanchez,* 172 F.3d at 1175. "[O]pinions formed by the judge on the basis of
24  facts introduced or events occurring in the course of the current proceedings, or of prior
25  proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-

seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555.

### IV.   CONCLUSION

For the reasons stated above, Defendant, Timothy Robert Nava's, Motion to Recuse (ECF No. 22) is **DENIED**.

**DATED** this 4th day of November, 2013.

_____
Gloria M. Navarro
United States District Judge